[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: ATTORNEY TRIAL REFEREE'S DECISION OF MAY 27, 2002
The plaintiff was, in April of 2000, an eighty-eight (88) year old who made two (2) loans which are the subject of this dispute. On April 26 of that year, he made the first such loan of $17,500 to the defendant D'Abundo for the purchase of a truck. That loan was evidenced by a note calling for bi-weekly payments of $450, of which $250 was to be "interest." Exhibit A. The plaintiff was to have a lien on the note until the note was paid in full. He was to "hold title" to the truck and was to be "listed as first lien holder as collateral." Id. The note also — inconsistently — provided, "Title to aforementioned motor vehicle may be held by a leasing company set up by Mr. D'Abundo." Id.
D'Abundo neither made the bi-weekly payments called for nor did he give the plaintiff a lien on the vehicle. One (1) day later, the plaintiff was persuaded to loan the further sum of $12,500; repayment of $10,000 of that amount was to be guaranteed by the co-defendant Funaro.[1] No note was given for the second loan; there was, however, an oral agreement that the loan was to be repaid in bi-weekly installments of $300. The amount of "interest" to be charged and the precise terms of that loan were disputed by the parties. Defendant D'Abundo made a total of three (3) payments. Defendant Funaro refused to make any payments on the second loan, claiming her liability did not arise until the truck had been sold. D'Abundo continues to own that truck and has made no effort to sell it.
In his report filed May 31, 2002 (dated May 27, 2002), the attorney trial referee, in paragraph 13, finds both loans "clearly usurious." He found the two (2)loans called for "bi-weekly principal payments of $340 and bi-weekly interest payments of $410 on the total debt of $30,000."Id. He concluded that, even considering these as business loans under General Statute § 37-9, which permits interest at what he calculated was 19.2%, the effective interest rate for the loans in question was 35.5% per year. Id. Thus, he found a violation of General Statute §37-4, this state's usury state which prohibits any agreement to receive interest rates greater than 12% per year and further found that, pursuant CT Page 93 to General Statute § 37-8, the plaintiff could not recover either principal or interest. Relevant, however, is the attorney trial referee's conclusion, in the same paragraph 13, that the plaintiff's testimony he did not intend to violate the usury statute "cannot avail him." He went on to state, "It is the amount he intended to charge as interest that matters." Id. While the attorney trial referee correctly concluded it was the intent of the plaintiff which was of prime importance in determining whether the loans were usurious, he failed to consider all of the evidence regarding the same and thus misapplied the law in concluding as he did that, on the basis solely of the "interest" provisions, the notes were usurious.
This state's Supreme Court long ago provided the violation of the usury statute does not inevitably follow the expressed intention to receive an interest rate in excess of that provided by the law. In the words of the court:
 To establish the illegality of the loan in question, the court must be satisfied of the plaintiff's specific, unlawful intent (Citation omitted.). The intent . . . which is necessary to constitute usury is not the specific intent to violate the statute but rather the intent to exact payments which exceed the amount of interest allowed by the statute (Citation omitted.) The act of taking an apparently usurious note is always susceptible of an explanation which will strip it of the intent required to render it offensive to the law (Citations omitted.). This presents a question of fact for the trier (Citations omitted.). Community Credit Union, Inc. v. Connors, 141 Conn. 301, 307 (1954).
The attorney trial referee, as finder of fact, made no finding regarding the plaintiff's specific intent to exact interest in an amount greater than that permitted by § 37-4. His findings, in Paragraph 13 of his report, that the plaintiff's contentions to the contrary could not avail him and that it was the amount he intended to charge as interest that mattered is to misapply the law which requires a finding the plaintiff intended to charge interest at a rate greater than permitted by the applicable statute. The trial testimony is replete with evidence that this elderly, lay, high school educated plaintiff[2] may have lacked the requisite intent. The plaintiff testified the parties never discussed "interest rate" (Page 7 of transcript.),[3] that it was "an interest rate plus a share of the profits" (Page 13 of transcript.), that he never "calculated the interest rate . . . never cared about it" (Id.), and that he did not understand the consequence of using the term "interest" and CT Page 94 that was "why no interest rate was stated in the document" (Page 52 of transcript — with reference to the unexecuted memorandum regarding the second loan.). This court cannot conclude the attorney trial referee either evaluated the plaintiff's credibility (as only the trier of fact can do) or that he determined the specific intent of the plaintiff with regard to interest charged. The Note for the first loan may well be on its face evidential of an intent to charge usurious interest, but it was open to an explanation which may have satisfied the trier of fact that the unlawful intent was missing. Regrettably, the report is silent on that point. Pertinent to the plaintiff's intent to charge a usurious rate is that, following the defendants' failure to make the promised payments or to give the plaintiff a lien on the truck and following an alleged threat by D'Abundo, the plaintiff obtained counsel who advised him of the need to reform the agreements, and he communicated to D'Abundo his desire to do so and requested D'Abundo to contact counsel for that purpose — a suggestion rejected by D'Abundo.[4] The attorney trial referee makes no finding whether that was indicative the plaintiff lacked the necessary intent to charge interest which was excessive under the statute or whether he found the testimony not credible. Both the plaintiff and D'Abundo testified they had no intention of making an illegal loan (Pages 12 and 83 of transcript.). The plaintiff was never asked if he knew, in April of 2000, what the legal interest rate was or if he had ever specifically calculated the interest rate being charged on either loan. The attorney trial referee's failure to find the plaintiff's specific intent with regard to the interest he intended to charge fatally flawed his report. To state the plaintiff's contentions to the contrary were "of no avail" (Paragraph 13 of report.) in the absence of such finding is to ignore this state's decisional law. It is therefore for a later court to make such finding in light of all the facts and circumstances and to determine whether the agreements need be reformed as a result either of mutual mistake or the mistake of one party coupled with actual or constructive fraud or inequitable conduct by the other party.
The judgment of the attorney trial referee is therefore set aside. The parties are ordered to report to Civil Caseflow within fourteen (14) days of this decision to pick a court trial date to occur no later than March 28, 2003.
 ___________________ SHEEDY, J.